Alright, the last case on the calendar today is United States v. Ballard Alright, we have Mr. Singer representing Mr. Ballard Whenever you're ready Mr. Singer Thank you your honor, and may it please the court, my name is Murray Singer, I represent the appellant Antonio Ballard I would like to focus my limited time before you today on points 3 and 4 of my brief And I'll work backwards, so we'll start at point 4 The prosecutor told the jury in his summation That there were no photos in TM's phone Said it unequivocally, and that simply is not an accurate statement There was testimony at this trial That deleted material may not have been included in the extraction And that same witness who had testified at the first trial Testified very specifically that there had been images recovered from the phone Why is this important? The defense was based on a challenge to the credibility of these three young women The government relied extensively, not just on the testimony But on the extraction from TM's phone, data, text messages That were on TM's phone to support the credibility of their witnesses And the defense attempt was to undermine their credibility And the information in the telephones was significant to that claim Well let me ask you this Mr. Singer, I think TM acknowledged at trial That either she or your client would write out the online ad and post it And I think another victim testified that your client sometimes used her phone To take photographs for the advertisement So obviously credibility was a central issue in the case But on the issue of photos and whether or not she used her own phone for the ads Or for photos, it doesn't seem like that was a critical issue in the case But maybe I'm missing something The government made a point of saying Hey, if there were photos in her phone, in TM's phone Defense counsel would have been waving them all in front of you They made that point and I'm assuming for the purpose of my question that that was improper But what I'm suggesting to you is They're saying they would have been there But apart from that, she conceded herself on the stand That she was involved in the making of the ads So the presence or absence of those photos on her phone I couldn't see how that was critical to their finding of guilt or credibility finding If the victim herself says, I helped do the ads And another victim said, yes, she used her phone for photos Why was that so important on credibility? It's important to credibility because it is the focus of the defense attempt To undermine the testimony Because the result of the government's argument There are no photos on TM's phone The result of that is that the photos had to have come from Appellant That he was the one that took the photos He's the one that got them included in the ads that were filed on Backpage And that the government's argument is that it had to have been him Because it was not from TM And yet the government made this emphatic statement to the jury It was never corrected by the trial judge to inform the jury that that was not accurate And the prosecutor knew or should have known that it was not accurate Because the same witness had testified at the first trial And said there were images on the phone And I also, if I may perhaps take issue with your formation of the question judge And asking why it was critical to the case I think first we have to determine if there was an error And I would submit that there was an error And why is it, was it critical, was it harmless I mean I'm not sure how we're formulating this I think the error to be significant has to go to a Certainly a principle issue in the case which it did here Which is the credibility of these young women Certainly their testimony was legally sufficient To go to a jury and to support any verdict But that's not the question that we look at at this stage We're looking was the error harmless Was the evidence overwhelming And I don't know how we can say that the evidence was overwhelming When the jury was unable to reach a verdict on several counts Including at least one count involving TM, right? Yes Can you tell me, sort of bring me back to Were you trial counsel here? No I was not Okay, so I'm trying to picture There's an objection to this statement in closing And there's a sidebar and no resolution And maybe if the government was the trial counsel They can help me with this when they're up I'm trying to sort of picture how this occurred And what the jury is seeing and thinking So the objection is during the course of the closing? Yes And the sidebar is during the course of the closing? Yes, I believe so And then the judge simply says Please take your seats And carries on? They just carried on There was no indication from the court Either that there had been any misstatement Or what the jury should do with it They simply moved forward With regard to point three I guess they tend to flow together a little bit Because it has to do with counsel's conduct But point three has to do with defense counsel's Absolute lack of effort to pursue What were obviously significant issues Related to the phones and the data from the phones And what to make of them But shouldn't those be raised in a habeas? They're raised here because this is where we are, Judge There was information in the record Throughout the record And the various motions that were filed We don't know what efforts the lawyer did make or not make To do another forensic examination of the phone We don't know if on a 2255 The discovery to do a forensic examination of the phone That would show the photos And what would have been there There's a lot of things that could happen Just to go to Judge Muriam's question We don't have anything We don't have an affidavit from the attorney As to what he or she did or did not do We don't know what a full extraction report If there is such a thing would have revealed So those are pretty significant, right? These are significant issues Certainly that are raised by the motions There's no indication in any motion or argument How can we tell if he was prejudiced? Let's say we say the lawyer should have done An independent forensic examination of the phone How can we determine he was prejudiced If we don't know what that independent forensic examination Would have revealed? It might have revealed nothing Right? The independent forensic examination was part of it The other part of it is that there were two cell phones That at the same time had the same telephone number I don't think there's an explanation for that I'm not an expert on telephones I don't necessarily know But there could be an explanation for that, right? There isn't Certainly not at that time Who knows what technology is done between 2014 and now But certainly at the time there was not And again, these were issues that were known to defense counsel They were litigated partly at the first trial They were litigated again through motion practice Prior to, during, and at the end of the second trial And there's no indication in the record That counsel followed up on these very significant matters Can I ask you about the Brady claim? Because I think it is related There is no, you can correct me if I'm wrong There's no evidence in the record That there was some fuller report Fuller extraction report that the government didn't turn over There's no evidence of that, right? All we have is the government's claim That they turned over everything that was taken from the phone And yet the expert testified That that report didn't necessarily Even that report did not necessarily get everything off of the phone And he had testified that there was other information That was on the phone that he had seen The government didn't get it It could be other information on the phone That through their extraction methods they didn't get That's not a Brady violation That would be the same as the government Not taking fingerprints off of a gun They don't do an examination They don't have anything to turn over We don't know the answer to that Because all we have is the government's statement That this is everything that they had And again, I mean, the points of the brief Tend to bleed together Your obligation to show that that statement was incorrect You're seeking a new trial We have a representation from the government Testimony, not just representation Testimony at the trial that this is the report And there's nothing in the record to suggest that that was false These points tend to bleed together Because they're all related to the inadequacy of counsel's work In pursuing what were significant issues that were raised That were certainly known to him that he did not pursue And ultimately, perhaps, point four should have been up at point one Because ultimately, that point That the argument by the government in their summation Went to the critical issue in the case And should, we argue, result in a new trial Again, a third trial Where appellant Mr. Ballard can get a fair shot To present his defense to a jury Thank you very much, Your Honor All right, we'll hear from Mr. Clymer for the government May it please the Court Stephen Clymer for the United States Preliminarily, Your Honor I'd like to correct a factual error in the government's brief One that Mr. Ballard's counsel pointed out in his reply brief In footnote 22, the government's brief Describes the relative strength of the proof In the first trial versus the second trial And makes the point that corroborating text messages Were introduced in the second trial In fact, they were introduced in both trials That was our mistake We apologize to the Court for it And to counsel for it For reasons which I'll explain, though This mistake doesn't matter For purposes of this Court's decision here Because the second, third, and fourth points In Mr. Ballard's brief All go back to TM's telephone And the report from the forensic analysis of that phone I'd like to clarify the record About what it shows regarding that phone And that forensic analysis Because I think there's some confusion In defense counsel's presentation to the Court That phone was obtained by the New York State Police On December 3rd When TM was in the hospital Recovering from the self-induced injuries A forensic examination was done by an officer named Cain The complete analysis that Cain did That he testified about Was 259 pages long It was marked in trial in the second case As Defense Exhibit 11 In both the first and the second trial The government introduced a pared down version Of that report Not the entire thing But part of it As Government Exhibit 16 In the first trial Cain testified about the differences Between the government's pared down version Exhibit 16 And the full version Which was Defense Exhibit 11 259 pages When testifying about that In this testimony Your Honor Is at Government Appendix page 22 and 23 And I highly commend it to the Court Because I think it clarifies A point of confusion here Cain did testify As Defense Counsel said And I'll read it to the Court So I don't get it wrong Don't forget you need to be at the microphone For Judge Cabranes Thank you, Your Honor The question by Government Counsel Page Government Exhibit 22 Like what would be an example of the additional In other words What's on the full report But that's not in Exhibit 16 The government's pared down version The answer begins by saying The images off the phone Were part of the original report That's the basis for Defense Counsel's claim That there were images on that phone But as Cain continues to testify It's clear that Cain was mistaken about that And it's irrefutable that he was mistaken Because there's no dispute that 259 The full report Does not have images in it And it's clear as you continue Cain's testimony Let's assume that's correct Let's assume that is the full report It didn't No images No images I was surprised to see in the government's brief That government didn't acknowledge That the statement in the summation Was improper How can you stand up in a summation And say if there were photos They'd be on this report You can correct me if I'm wrong Where there is zero Zero testimony in the record That would allow a prosecutor to say that Well, Your Honor I think that it's a statement that's concerning And certainly not one I would recommend to a prosecutor Hold on Let me explain, Your Honor Let me explain Go ahead The prosecutor has what he believes And by the way, I was not trial counsel So I don't want to make a mistake about that But the report indicates that It's an entire report And it's possible there are deleted images That didn't make it That's one inference one can draw It's possible that the report was not complete That's an inference one can draw But it's also an inference that one can draw From that report That the report is complete There's no No, that's what we call speculation There's no With all those inferences They're all equally possible We don't know any of them We don't know any of them You can't stand up in front of the jury And say You'd have to have the experts say I did a thorough forensic examination of that report And the software that I used would reveal Would capture any images on the phone Then you could stand up and say You heard the testimony of the state police Their software picks up images And there were none That would be the basis An evidentiary basis to make that What he was suggesting the jury do Is become experts on their own Try to figure out what an extraction does or does not do And they have no basis for doing that You don't know that I don't know that The jury couldn't know that So that's not a reasonable inference That's just speculation If the prosecutor heard here I think maybe he heard by assuming That the report was complete When he didn't have the evidence of that Because the inference is based on an assumption That the report was complete So let's assume it was improper Why isn't it sufficient to warrant a new trial?  And having photos potentially on her phone Would make a difference Ironically, your honor I think it doesn't matter Because the prosecutor is making another mistake At the same time And the mistake he was making Was trying to suggest That there was no evidence That TM took pictures When, as you pointed out in question And my colleague here TM admitted that she took pictures In fact, if you look at The defense appendix at page 509 There's a passage where she describes taking pictures So whether pictures were on that phone or not Doesn't really matter There was no question in this case Whether TM was deeply involved In the prostitution ring Whether she took pictures Whether she posted pictures on Backpage She readily admitted all those things And there was no contest about that The question that was before the jury Was what was the extent of Ballard's involvement In the prostitution? And there simply could not be prejudice From the misstatement Other than her testimony Which they say was Credibility was critical What evidence was there in the record That he was involved in taking photos And or creating the ads for her Independent of her testimony? The testimony of the two other victims His telephone number was on the advertisements When people would have to call in When they looked at the ad The number to call Some of the ads had his telephone number on them There's also the recording between TM And Mr. Ballard About the prostitution activity In addition, when Mr. Ballard was in jail Waiting retrial He made statements to three other inmates Not only admitting his involvement But describing details about how the scheme worked That was consistent with the testimony Of all three of the victims So there was clearly sufficient evidence here Beyond any dispute about What TM's phone may or may not have shown And yet, after a full trial The jury hung on three counts Including both counts Relating to one of the three victims So in terms of the evidence being Based on the victim's testimony Isn't that You know, when we're looking at the factors On whether an improper summation Caused You know, infected the fairness of the trial Here, one of the three potential witnesses That can incriminate him The jury didn't find her persuasive enough To convict him on the two counts involving her And in fact, as to the direct sex trafficking count Involving TM Not the financial benefit or the inducement But the direct count found Again, was unable to find him guilty Doesn't that suggest that there was a It was a very close call in general in this trial? Well, in my recollection The jury convicted on two of the three counts Involving TM That's correct And hung on the third But the third is the actual direct sex trafficking count Not the financially benefiting from That's correct, your honor But the The other count that the jury convicted on Involved engaging in prostitution So it was clear that the jury Was convinced that Ballard was involved In TM prostituting herself It had to reach that conclusion To convict on the third count Involving TM We don't know what the makeup of the jury was What was the difference on the count they hung on? I know it's hard to tell sometimes Why would they have hung on that count? What was the difference? What had to be proven on that count? The statute that the jury hung on is 1591 18 U.S.C. 1591 It's got two subparts Subpart A1 Involves being involved in a Sex trafficking of a minor Part 2 involves financially benefiting From sex trafficking of a minor It convicted on the second Not on the first I can't explain that verdict, your honor It seems to me it's inconsistent With the guilty verdict on the second count And the third count But there may be a way to try to reconcile That outcome I don't know how many jurors voted to acquit Whether it was one Whether it was 11 I simply don't know All right Unless the court has questions That's all I have I ask the court to affirm on all counts And thank the court for its attention All right, thank you All right, we will reserve decision I appreciate you both coming in And have a good day That concludes the business of the court today With thanks to Ms. Beard I would ask that she adjourn court Court stands adjourned